UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MURRAY DAILEY,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:16-cv-1418

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 51 years of age on his alleged disability onset date. (PageID.344). He successfully completed high school and previously worked as a cook, counter clerk, information clerk, case aide, sales representative, and executive director. (PageID.175-76). Plaintiff applied for benefits on February 13, 2014, alleging that he had been disabled since January 29, 2014, due to tendinitis in his upper extremities, right knee injury, right hip contusion, arthritis, left knee injury, and anxiety disorder. (PageID.344-50, 430). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.244-341).

On September 3, 2015, Plaintiff appeared before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert. (PageID.188-242). In a written decision dated October 28, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.167-77). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.33-38). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 31, 2009, Plaintiff reported that he was experiencing right knee pain. (PageID.483). A physical examination revealed the following:

> very minimal tenderness along the medial joint line. Negative McMurray's. Negative AP drawer and negative Lachman's. Negative straight leg raising sign. Tight hamstrings bilaterally. The hip exam today is relatively benign with no excessive pain with internal or external rotation.

(PageID.483).

On June 11, 2009, Plaintiff participated in an EMG and Nerve Conduction Study of his right lower extremity, the results of which were "normal" with "no signs of acute or chronic radiculopathy" and "no signs of focal entrapment neuropathy or peripheral neuropathy." (PageID.477-78).

A July 9, 2009 examination of Plaintiff's right knee revealed:

> focal tenderness along the iliotibial band but no joint line tenderness. No joint effusion. ROM of the knee intact with no gross instability noted.

(PageID.481). The doctor recommended that Plaintiff participate in physical therapy. (PageID.481).

X-rays of Plaintiff's right knee, taken on October 24, 2012, revealed "no acute bony abnormalities." (PageID.494). Treatment notes dated January 31, 2013, indicate that Plaintiff was participating in "outpatient counseling" and that his anxiety "remains stable." (PageID.499). X-rays of Plaintiff's lumbosacral spine, taken on February 5, 2013, revealed "mild" abnormalities, but were otherwise unremarkable. (PageID.558). An MRI of Plaintiff's right knee, performed on February 7, 2013, revealed "findings suggestive of [a] small tear of the undersurface of the medial meniscus." (PageID.493).

On July 1, 2013, Plaintiff reported that he "walked off his job in Feb 2011" because "he could not handle his wife at home." (PageID.510, 518). Plaintiff reported that he wife "is bipolar" and "paranoid." (PageID.510, 518). Plaintiff reported that he "has anxiety from dealing with his wife and life changes." (PageID.510). Plaintiff further reported, however, that he was "looking for work." (PageID.510).

X-rays of Plaintiff's right hip, taken on March 3, 2014, revealed "mild to moderate osteoarthritis." (PageID.563). X-rays of Plaintiff's chest, taken March 18, 2014, revealed "no

acute pulmonary process." (PageID.624). An MRI of Plaintiff's thoracic spine, performed on March 26, 2014, revealed that the "thoracic vertebral bodies and discs are normal" and "the cord is normal." (PageID.622). Treatment notes dated March 31, 2014, indicate that Plaintiff exhibited "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection." (PageID.601).

On April 22, 2014, Plaintiff underwent arthroscopic surgery to repair the meniscus tear in his right knee. (PageID.587). Treatment notes dated April 28, 2014, indicate that Plaintiff was experiencing "opiate dependency." (PageID.591-92). Plaintiff reported that he had experienced "problems with pain meds for y[ea]rs." (PageID.592). The results of a physical examination were unremarkable. (PageID.593).

On June 3, 2014, Plaintiff participated in a psychiatric consultation. (PageID.632-38). Plaintiff reported that he was disabled due to "arthritis in both knees and hips, tendonitis in his right arm, and an anxiety disorder." (PageID.632). Plaintiff reported that he last worked in 2014 when he "was fired for poor attendance." (PageID.632). Plaintiff also reported that he has "a history of quitting jobs because he would get bored. . .and get another job." (PageID.633).

Plaintiff reported that he gets his three children ready for school each morning, including driving them to school. (PageID.634). Plaintiff reported that "he does all the housework, laundry, and cooking." (PageID.634). Plaintiff also reported that he takes his children to "t-ball practice" and "manages the family's money without difficulty." (PageID.634). Plaintiff exhibited an "unremarkable" gait and "good" posture. (PageID.635). The results of a mental status examination were unremarkable. (PageID.635-37).

Plaintiff was diagnosed with generalized anxiety disorder with panic attacks. (PageID.637). The examiners concluded that Plaintiff "is able to understand, remember, and carry out simple instructions." (PageID.637). The examiners further noted that Plaintiff's "social interactions were adequate" and "he seems to be managing [his] symptoms fairly well." (PageID.637).

Treatment notes dated June 20, 2014, indicate that Plaintiff's left knee pain is "under control" with his current medications. (PageID.743). A July 22, 2014 examination of Plaintiff's hips was "benign, [with] suggestion of mild tightness both sides on internal rotation with the hips flexed." (PageID.773-74). X-rays of Plaintiff's hips revealed "mild early osteoarthritic changes." (PageID.774). An examination of Plaintiff's left knee revealed:

At the left knee, has anteromedial longitudinal peripatellar incision which is well healed. There are no acute synovitic changes but on exam, he does have mild ACL instability with perhaps 2mm increased translation on Lachman and anterior drawer maneuvers on the left compared to normal right knee. Collateral stability is excellent. There is no effusion. No patellofemoral findings and no sag sign.

(PageID.774).

Treatment notes dated March 27, 2015, indicate that Plaintiff was "currently employed." (PageID.777). The doctor further noted that Plaintiff "exercises in the form of walking; JOB IS HIS EXERCISE." (PageID.777).

Treatment notes dated April 13, 2015, indicate that Plaintiff reported experiencing bilateral elbow pain. (PageID.647-50). An examination of Plaintiff's elbows revealed full strength, full range of motion, and negative Tinel's sign. (PageID.648-49). On April 20, 2015, Plaintiff participated in an MRI examination of his right hip, the results of which revealed:

MR images show no pelvic masses. The lumbar sacral spine is unremarkable. SI joints appear normal. Osteoarthritis is present on the right. This is characterized by superolateral joint space

narrowing and osteophyte formation. The is no evidence for avascular necrosis. No abnormal signal in adjacent musculature. (PageID.759).

On July 30, 2015, Plaintiff reported to the emergency room complaining of left knee pain. (PageID.1029-31). The results of a physical examination were unremarkable. (PageID.1029-31). X-rays of Plaintiff's left knee, taken August 9, 2015, revealed "mild" osteoarthritis. (PageID.1064). An August 25, 2015 examination of Plaintiff's left knee was unremarkable and x-rays revealed "mild-to-moderate degenerative changes." (PageID.1098-1100).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) osteoarthritis of the bilateral knees and hips; (2) right knee medial meniscal tear, status post arthroscopy/meniscectomy; (3) lateral epicondylitis; (4) plantar fasciitis; (5) hypertension; (6) anxiety disorder; and (7) a history of substance abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.169-71).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can carry 20 pounds occasionally and 10 pounds frequently; (2) in an 8-hour workday, he can sit, stand, and walk for 6 hours each; (3) he requires the option to change position every 20-30 minutes for

3-5 minutes at a time; (4) he can never climb ladders, ropes, or scaffolds; (5) he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; (6) he cannot use air, power, torque, pneumatic, or vibratory tools; and (7) he can perform simple, routine, repetitive tasks. (PageID.171).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 140,500 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.232-38). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed

9

'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Evaluated Dr. Montasir's Opinion**

On September 9, 2014, Dr. Essam Montasir offered opinions regarding Plaintiff's ability to function which are inconsistent with the ALJ's RFC determination. On September 2, 2015, the doctor provided a statement updating and clarifying some of his responses to the earlier questionnaire. The ALJ afforded only limited weight to the doctor's opinions. Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to provide good reasons for affording less than controlling weight to the opinions of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d

11

1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

On September 9, 2014, Dr. Montasir completed a questionnaire regarding Plaintiff's functional ability. (PageID.640-43). This questionnaire was supplemented by Dr. Montasir on September 2, 2015. (PageID. The doctor reported that Plaintiff cannot stand for longer than 15-20 minutes or walk further than 2-3 blocks. (PageID.641, 1106). The doctor reported that during an 8-hour workday, Plaintiff can sit for "about 4 hours" and stand/walk for "less than 2 hours." (PageID.642, 1106).

Dr. Montasir reported that Plaintiff can only occasionally lift/carry 10 pounds and can rarely lift/carry 20 pounds. (PageID.642). The doctor reported that Plaintiff can rarely twist and can never stoop, crouch, or squat. (PageID.643). The doctor reported that when Plaintiff engages in "prolonged sitting," a term which the doctor did not define, Plaintiff's legs must be elevated at 75 degrees 20 percent of the time. (PageID.642). According to the doctor, elevation of Plaintiff's legs is necessary to "reduce the edema and swelling in his legs." (PageID.1106). Finally, the doctor reported that Plaintiff, due to his "impairments or treatment," would be absent from work "about four days per month." (PageID.643).

The ALJ assigned "minimal weight" to Dr. Montasir's opinions on the ground that such "appear to be exaggerated and are not well supported by [the doctor's] own treatment records or the other medical evidence of record." (PageID.174-75). As discussed above, the objective medical evidence revealed nothing which supports the extreme limitations articulated by Dr. Montasir. As the ALJ recognized, the doctor's contemporaneous treatment notes do not support his subsequent opinions. (PageID.521- 49, 654-765, 889-919, 1065-76). Plaintiff's reported

12

activities, including his March 27, 2015 admission that he was presently working and walking for exercise, likewise contradicts Dr. Montasir's opinions. In sum, the ALJ's decision to discount Dr. Montasir's opinions is supported by substantial evidence. Accordingly, this argument is rejected.

**II.      The ALJ Properly Evaluated Dr. Tanna's Opinion**

On May 30, 2014, Dr. Dinesh Tanna reviewed Plaintiff's medical records and opined as to Plaintiff's residual functional capacity. (PageID.252-53). The ALJ afforded "significant weight" to Dr. Tanna's opinion. (PageID.174). Plaintiff argues that the ALJ erred "by failing to explain why he did not include a significant limitation found by Dr. Tanna – the Plaintiff's inability to push and pull – when he determined Plaintiff's RFC." (PageID.1235).

Contrary to Plantiff's argument, Dr. Tanna did not conclude that Plaintiff was unable to push and pull. The doctor instead found that Plaintiff's ability to push and pull was "unlimited" subject to limitations regarding his ability to lift/carry. (PageID.252). The doctor concluded that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently. (PageID. 252). Thus, with respect to Plaintiff's ability to push and pull, Dr. Tanna's opinion was not inconsistent with the ALJ's RFC determination. Accordingly, this argument is rejected.

**III.     The ALJ's Credibility Assessment is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that he was far more limited than the ALJ determined in his RFC assessment. For example, Plaintiff testified that he was unable to walk more than one block. (PageID.210). Plaintiff reported that he was unable to lift a coffee cup or put on his pants. (PageID.212). Plaintiff reported that he has to "recline and elevate [his] legs half of the day." (PageID.229). The ALJ found that Plaintiff was not credible and,

13

accordingly, discounted his subjective allegations. (PageID.171-74). Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

14

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable

will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ concluded that Plaintiff's subjective allegations were not credible because such were inconsistent with the medical evidence, Plaintiff's reported activities, and Plaintiff's relatively conservative treatment. (PageID.171-74). As previously discussed, the ALJ's rationale is supported by substantial evidence. This argument is, therefore, rejected.

**IV.        The ALJ Properly Relied on the Vocational Expert's Testimony**

As noted above, the ALJ found that Plaintiff retains the ability to perform a limited range of light work with a sit/stand option. The vocational expert testified that there existed approximately 140,500 jobs which Plaintiff could perform consistent with his RFC: (1) mail room clerk (99,000) and (2) office helper (41,500). (PageID.237-38). With respect to the mail room clerk positions, the vocational expert stated:

> The DOT does not classify work as a sit – or for a sit stand option.
> I will be relying on professional experience. I believe that position
> was offered into evidence, predominantly done at the sedentary.
> There are approximately 99,000 jobs in the national economy.

(PageID.237).

Plaintiff argues that based upon this testimony by the vocational expert, he should be considered to be limited to sedentary work in which case he is entitled to disability benefits pursuant to the medical-vocational guidelines (a.k.a. the "grids").

The ALJ concluded that Plaintiff was able to perform a limited range of light work which means that Plaintiff is likewise able to perform sedentary work consistent with his RFC. *See* 20 C.F.R. § 404.1567(b) ("[i]f someone can do light work, we determine that he or she can also do sedentary work"). That certain jobs identified by the vocational expert as consistent with

16

Plaintiff's RFC are characterized as sedentary because of Plaintiff's need for a sit-stand option does not invalidate the ALJ's RFC determination. Moreover, even if such were the case, the outcome would be the same as the vocational expert identified 41,500 different light duty jobs which Plaintiff could also perform consistent with his RFC. As noted above, this is a significant number of jobs.

Plaintiff next argues that the ALJ improperly relied on the vocational expert's testimony. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert testified that there existed approximately 140,500 such jobs nationwide. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony. Accordingly, these arguments are rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date: March 12, 2018                                      /s/ Ellen S. Carmody
                                                                                            ELLEN S. CARMODY
                                                                                            United States Magistrate Judge